| | |
|---|---|
| American College of Pediatricians, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> Xavier Becerra, in his official capacity as Secretary of the United States Department of Health and Human Services, *et al.*, <br><br> Defendants. | Case No. 1:21-cv-195-TAV-SKL |

## MEMORANDUM IN SUPPORT OF MOTION TO DENY AS PREMATURE OR STAY PLAINTIFFS' EARLY MOTION FOR SUMMARY JUDGMENT

Plaintiffs' First Amended Complaint raises over a dozen challenges to three different sets of regulatory activities undertaken by the U.S. Department of Health and Human Services (HHS). Rather than litigate those challenges under ordinary rules of proceedings, or make the extraordinary showings necessary for a preliminary injunction at the outset of the litigation, Plaintiffs propose a hybrid set of proceedings that is doubly beneficial to them: they ask this Court to skip straight to summary judgment on substantially all of their challenges and enter a permanent injunction in Plaintiffs' favor. This approach would deprive Defendants of their opportunity to raise meritorious jurisdictional defenses prior to the costly and burdensome process of litigating summary judgment, and it would prejudice Defendants' development of record evidence for their defenses. It would also impose serious costs on this Court by clogging its docket with extensive and unnecessary merits litigation prior to the winnowing of claims and defenses that ordinary proceedings offer. And Plaintiffs can give no justification why this case—now pending for five months, and challenging nothing that postdates May 2021—needs immediate permanent relief. This Court should deny as

premature or stay Plaintiffs' motion for early summary judgment and instead permit Defendants to raise their initial defenses in a motion to dismiss.

## BACKGROUND

This lawsuit raises over a dozen challenges to three distinct sets of regulatory activities by HHS. Plaintiffs are a medical doctor in Tennessee and two medical associations purporting to represent their members. In essence, they contend that two HHS actions— an unreviewable statement of policy that says nothing about the practices Plaintiffs want to protect, and a 2016 rule that HHS does not enforce—impermissibly prohibit discrimination on the basis of gender identity. And they contend that a third regulatory action—a rule that has never taken effect and is currently being rescinded—entitles them to a review of those first two activities that must be conducted sometime in the next ten years.

The first set of challenged regulatory activities relates to § 1557 of the Affordable Care Act, codified at 42 U.S.C. § 18116(a), which prohibits discrimination on the basis of sex in federally funded health programs or activities. *See* 42 U.S.C. § 18116(a) (incorporating, *inter alia*, Title IX's prohibition of discrimination on the basis of sex, 20 U.S.C. § 1681(a), into federal health care law under § 1557 of the Affordable Care Act). In 2021, HHS notified the public that HHS would interpret that provision to prohibit discrimination on the basis of sexual orientation and gender identity. *See* Notification of Interpretation and Enforcement of Section 1557 of the Affordable Care Act and Title IX of the Education Amendments of 1972, 86 Fed. Reg. 27,984 (May 25, 2021) ("Notification"). Plaintiffs challenge that statement of agency policy, and in doing so they also appear to challenge a 2016 rule relating to § 1557, although the provision of that rule prohibiting discrimination on the basis of gender identity has already been vacated by a district court order. *See Franciscan Alliance v. Azar*, 414 F. Supp. 3d 928 (N.D. Tex. 2019). Plaintiffs' motion for early summary judgment claims that HHS's statement of policy in the Notification is inconsistent with § 1557, violates the Administrative Procedure Act's prohibition on arbitrary and capricious agency action, violates Plaintiffs' freedom of speech, violates the Religious Freedom Restoration Act

(RFRA), violates the Free Exercise Clause, and illegally forwent notice-and-comment rulemaking procedures.

The second set of regulatory activities they challenge relates to HHS's rules for grants. In 2016, HHS issued a rule that generally required recipients of HHS grants to comply with HHS's public policy of not excluding otherwise eligible participants from HHS programs on the basis of gender identity. *See* Health and Human Services Grants Regulation, 81 Fed. Reg. 89393 (Dec. 12, 20216). In 2019, HHS announced it would not enforce that rule, and this Notice of Nonenforcement is still in effect. *See* Notification of Nonenforcement of Health and Human Services Grants Regulation, 84 Fed. Reg. 63809 (Nov. 19, 2019). Plaintiffs challenge that 2016 rule, despite the protections provided by the Notice of Nonenforcement. Their motion for early summary judgment raises almost all the same challenges to the 2016 grants rule that they raise to the § 1557 Notification: lack of statutory authorization, arbitrary and capricious, freedom of speech, RFRA, and Free Exercise.

The third set of regulatory activities they challenge relate to the periodic review of HHS regulations. In January 2021, HHS issued the SUNSET Rule, which mandates that HHS periodically review certain existing regulations; for a covered regulation issued within the past ten years, HHS would have ten years from the effective date of the SUNSET Rule to perform its review, or else the regulation at issue would expire ten years after the SUNSET Rule took effect. *See* SUNSET Rule, 86 Fed. Reg. 5694 (Jan. 19, 2021). HHS has stayed the SUNSET Rule and has issued a notice of proposed rulemaking to repeal the SUNSET Rule. *See* Proposal to Withdraw or Repeal, 86 Fed. Reg. 59906 (Oct. 29, 2021). Plaintiffs' motion for early summary judgment claims that the stay of the SUNSET Rule violates the Administrative Procedure Act and is statutorily unauthorized, and that Plaintiffs are therefore entitled to participate in the SUNSET Rule's review process with respect to § 1557 and the grants rule.

## ARGUMENT

This Court should stay or deny as premature Plaintiffs' motion for early summary judgment. Defendants have numerous strong jurisdictional defenses they are entitled to raise, and those

defenses are likely to eliminate or substantially narrow Plaintiffs' claims at the motion-to-dismiss stage. Proceeding in the ordinary course by resolving Defendants' forthcoming motion to dismiss first will preserve the resources of the parties and of this Court, as opposed to immediately bringing substantially all of Plaintiffs' claims to final judgment before Defendants even respond to the Complaint. And Plaintiffs' request would prejudice Defendants' preparation and presentation of their own defenses on the merits as well. Furthermore, Plaintiffs cannot show any exceptional need to proceed immediately to summary judgment in this case. They face no likely injury at all, let alone a sufficient exigency to effectively get extraordinary preliminary relief in the form of a permanent injunction. This Court should stay summary judgment proceedings until after it has resolved Defendants' forthcoming motion to dismiss.[1]

### I. Proceeding to summary judgment would unnecessarily burden Defendants and this Court.

This Court should not proceed to summary judgment before ruling on Defendants' numerous meritorious jurisdictional defenses. The Supreme Court has instructed courts to resolve jurisdiction before proceeding any further in a case: "'Without jurisdiction the court cannot proceed at all in any cause.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 7 Wall. 506, 514 (1868)). The primacy of jurisdiction suggests that, in the typical case, the most appropriate course is to resolve the jurisdictional dispute before proceeding any further. *See, e.g.*, *In re: 2016 Primary Election*, 836 F.3d 584, 587 (6th Cir. 2016) ("[C]ourts must decide jurisdictional issues before merits issues."). And skipping directly to summary judgment, before a responsive

---

[1] Ordinarily, Defendants' deadline to answer or otherwise respond to the First Amended Complaint would be January 14, 2022, as Plaintiffs never served their original Complaint and served their First Amended Complaint on November 15, 2021. *See* Fed. R. Civ. P. 12(a)(2). Because Plaintiffs initially stated they intended to file a motion for a preliminary injunction, the parties agreed that they would seek to stay Defendants' Rule 12 deadline until after this Court resolved that preliminary-injunction motion. When Plaintiffs stated their intent instead to seek early summary judgment, the parties jointly moved to stay the Rule 12 deadline until thirty days after granting this motion to stay summary-judgment proceedings, if the Court grants it. *See* Consent Motion for Leave to File Excess Pages and Set Deadlines, ECF No. 26 (Jan. 7, 2022). Defendants anticipate filing a motion to dismiss if this Court grants this motion to stay.

MEMORANDUM IN SUPPORT OF MOTION TO DENY OR STAY - 4

pleading has been filed and before jurisdictional defects have been addressed, is contrary to the spirit of the Federal Rules of Civil Procedure, as confirmed by the Advisory Committee. *See* Fed. R. Civ. P. 56 advisory committee's note (2010 amendments) ("Although the rule allows a motion for summary judgment to be filed at the commencement of an action, in many cases the motion will be premature until the nonmovant has had time to file a responsive pleading or other pretrial proceedings have been had."). Even though Rule 56 does not impose a blanket prohibition on filing for summary judgment early in a particular case, this case is a prime example of why the practice should be the exception and not the rule.

Defendants intend to raise serious jurisdictional defects in Plaintiffs' suit. For example, Plaintiffs lack Article III standing with respect to any of their claims, and their challenges are also not ripe. That serious jurisdictional defenses exist is only emphasized by the other litigation challenging the § 1557 Notification. Two other cases have challenged that Notification: *Neese v. Becerra*, 2:21-cv-163-Z (N.D. Tex.), and *Christian Employers Alliance v. EEOC et al.*, 1:21-cv-195 (D. N.D.). In *Neese*, several medical doctors challenged the Notification. Defendants moved to dismiss on several jurisdictional grounds, including that the plaintiffs in that case lacked Article III standing, that their claims were not ripe, and that they had not identified a final agency action as is required to assert jurisdiction under the Administrative Procedure Act. *See* Motion to Dismiss at 16–23, *Neese*, 2:21-cv-163-Z, ECF No. 16 (N.D. Tex. Dec. 14, 2021) (attached as Exhibit 1). And in *Christian Employers Alliance*, in which an organization claimed associational standing to challenge the Notification, Defendants raised the same defenses and also challenged the plaintiff's assertion of associational standing. *See* Opposition to Preliminary Injunction at 24–33, *Christian Employers Alliance*, 1:21-cv-195, ECF No. 18 (D. N.D. Nov. 22, 2021) (attached as Exhibit 2).

Here, Defendants would raise at least those same defenses with respect to the Notification—that Plaintiffs lack standing, that their claims are not ripe, and that there is no final agency action. And Defendants intend to raise similar jurisdictional defenses with respect to the 2016 grants rule and the SUNSET Rule as well. With respect to the 2016 grants rule, Plaintiffs cannot show that they have standing and a ripe challenge for injunctive relief against a rule HHS has

MEMORANDUM IN SUPPORT OF MOTION TO DENY OR STAY - 5

publicly declared it is not enforcing. Indeed, in another lawsuit challenging the 2016 grants rule, the court dismissed the lawsuit as moot based in part on the Notice of Nonenforcement. *See Texas Dep't of Fam. & Protective Servs. v. Azar*, 476 F. Supp. 3d 570, 578 (S.D. Tex. 2020). And with respect to the SUNSET Rule, Plaintiffs cannot show that they have standing and a ripe challenge for injunctive relief against a rule that is in the process of being repealed and would impose no obligations on HHS for another decade regardless.

Resolving these jurisdictional questions first would save not just Defendants' resources, but also this Court's. Even at fifty-five pages, Plaintiffs' motion for early summary judgment belies the number of challenges it raises. For example, in just two pages of their motion for early summary judgment, Plaintiffs claim that interpreting § 1557 to bar gender-identity discrimination would violate seven separate statutory provisions, each of which gets roughly two sentences of briefing and explanation. *See* Mot. for Summary Judgment at 31–32 (arguing that the Notification violates Title IX's religious exemptions, three parts of the Affordable Care Act's provisions relating to promoting access to care, two statutory conscience protections, and a provision relating to Medicare). This is exactly why the winnowing of claims in the motion-to-dismiss stage is so important. Because Plaintiffs lack standing to challenge the Notification, and because challenges to the Notification are unripe regardless, it would waste party and judicial resources to engage in potentially hundreds of pages of briefing on the merits of claims that should be dismissed on their face.

Skipping to summary judgment would prejudice Defendants not just because it would force them to litigate the merits of their claims to final judgment despite their strong jurisdictional defenses, but also because it would prevent Defendants from exercising their rights in developing the record in this litigation. For one, HHS should be afforded the opportunity to consider conducting discovery as to Plaintiffs' standing if their forthcoming motion to dismiss is denied. Because Article III standing's requirements are "an indispensable part of the [Plaintiffs'] case," Plaintiffs must prove their Article III standing at every stage of this litigation, "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). On a motion for summary judgment, Plaintiffs "can no longer rest on such

MEMORANDUM IN SUPPORT OF MOTION TO DENY OR STAY - 6

'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts.'" *Id.* (quoting Fed. R. Civ. P. 56(e)). But Plaintiffs are proposing that Defendants be limited to the record Plaintiffs have filed in this case, which consists of three self-serving declarations. Defendants are entitled to consider seeking discovery relating to jurisdiction—for example, Jeanie Dassow is the only individual plaintiff in this case, and Defendants would be entitled to seek discovery regarding her purported standing to challenge the regulatory activities at issue in this case.

Additionally, HHS should be afforded the opportunity to compile an administrative record to defend its policies. Plaintiffs challenge the Notification and the 2016 grants rule as arbitrary and capricious, yet they want to proceed to final judgment without HHS's having a chance to compile a record in defense of its decisions. *See, e.g.*, *Latin Americans for Soc. & Econ. Dev. v. Adm'r of Fed. Highway Admin.*, 756 F.3d 447, 464–65 (6th Cir. 2014) ("Normally, a court's review of an agency action under the APA to determine whether the agency decision was arbitrary and capricious is limited to the administrative record, which includes materials compiled by the agency at the time its decision was made."). This is another example of why Plaintiffs' proposed deviation from ordinary proceedings should not be accepted, as they propose resolving their arbitrary-and-capricious challenges without providing HHS and this Court a chance to present and review the administrative record responding to such claims. Of course, before the agency is put to the burdensome task of compiling such a record, the Court should have a chance to rule on Defendants' jurisdictional defenses, which, if accepted, would make that burdensome process unnecessary.

In short, Plaintiffs have proposed that the entire course of civil litigation be short-circuited in a manner that will prejudice Defendants and bog down the parties and this Court with unnecessary litigation in the absence of jurisdiction. This Court should reject that request and either deny the motion for early summary judgment as premature or stay it. Defendants will be filing a motion to dismiss that raises serious jurisdictional defects in Plaintiffs' case, and even if Plaintiffs' claims are not all dismissed outright for want of jurisdiction, the scope of any remaining claims will be at least seriously reduced.

## II. No good reason exists to deprive Defendants of the orderly administration of this case.

By requesting that this Court skip all pretrial litigation and grant them final judgment and a permanent injunction, Plaintiffs are essentially requesting that this case be treated as a preliminary-injunction proceeding without any of the attendant burdens on them, such as showing why they need the extraordinary remedy of immediate injunctive relief. *See, e.g. Southern Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 848–49 (6th Cir. 2017) (a preliminary injunction "necessarily happen[s] before the parties have had an opportunity to fully develop the record," and is "an extraordinary and drastic remedy"). Yet there is no reason for this case to deviate from the normal course of civil litigation and the procedural protections it offers to defendants. Without some showing of extraordinary justification, Plaintiffs are essentially arguing that any plaintiff should be permitted to move for summary judgment prior to Rule 12 proceedings, thereby requiring defendants to prematurely respond on the merits even when dismissal of the Complaint would be appropriate under Rule 12. That cannot be the default rule, and Plaintiffs can offer no justification to apply a special rule here.

Plaintiffs cannot seriously argue that they face some extraordinary or imminent risk of harm absent the extraordinary remedy of immediate injunctive relief. For each of the regulatory activities they challenge, their theory of harm is either highly speculative or in fact precluded by current agency practice; it certainly cannot amount to an extraordinary showing of harm.

First, they cannot show any need for immediate relief with respect to § 1557, because Plaintiffs have not identified any binding rule that does what Plaintiffs say. They claim that HHS has prohibited a litany of practices and has laid down specific binding rules with respect to gender-transition surgery, pronoun usage, and other issues, but that is just not true; they reach that conclusion based on the erroneous belief that the partially vacated, and rescinded, 2016 rule is in effect, and they add a healthy dose of speculation about how HHS might apply the prohibition on gender discrimination in the future. Instead, HHS's 2021 Notification states only that the agency will interpret § 1557's prohibition on sex discrimination to include a prohibition on sexual-orientation

and gender-identity discrimination. Whether a particular practice is in fact prohibited by § 1557 will be a matter for later proceedings to determine; HHS's Notification does not state, for example, that a doctor must provide gender-transition services to comply with § 1557, and any speculation about what practices will or will not count as gender-identity discrimination is just speculation. Plaintiffs have not shown that the Notification has the effect of prohibiting any practice in which they are engaged, meaning they cannot show any entitlement to a legal judgment resolving that question, let alone an immediate judgment prior to a full litigation of the claims and defenses presented.

Plaintiffs likewise cannot show a need for expedited relief with respect to the 2016 grants rule. HHS issued a Notice of Nonenforcement of that rule in 2019, and the agency continues to operate under that notice. Plaintiffs have not argued that there is any reason to believe HHS will abrogate that notice anytime soon, let alone during the pendency of this legal challenge. For that reason, their claims relating to the 2016 grants rule lack even the baseline urgency that might accompany a challenge to a regulation that is actually being enforced—let alone some special urgency that merits a reversal of the ordinary course of litigation.

Finally, for the SUNSET Rule, Plaintiffs cannot show an urgent need for relief, because, even if that Rule were still in effect, it would not mandate any agency action for almost a decade. Plaintiffs contend that they are being harmed because they would have participated in the public comment period mandated by the SUNSET Rule. But the SUNSET Rule gives HHS ten years to conduct a review; only if the review is not completed in that period does the unreviewed provision expire. So Plaintiffs are asking this Court for extraordinary early relief so they can participate in a public comment period sometime before 2031. And given that HHS is in the process of repealing the SUNSET Rule, it is far likelier that Plaintiffs' claims with respect to the SUNSET Rule will be moot long before they are ripe.

In short, Plaintiffs' claims are appropriate for consideration through the ordinary litigation process. They made the decision to forgo seeking a preliminary injunction, which would have required a showing of impending irreparable injury, and they should not be permitted to seek the same extraordinary proceedings and relief without the same burden by labeling their motion as one

MEMORANDUM IN SUPPORT OF MOTION TO DENY OR STAY - 9

Case 1:21-cv-00195-TRM-SKL   Document 32   Filed 01/18/22   Page 9 of 10   PageID #: 917

for summary judgment. This Court should maintain the orderly administration of civil litigation in this case.

## CONCLUSION

This Court should deny as premature Plaintiffs' motion for early summary judgment or, in the alternative, stay that motion pending the filing and disposition of Defendants' forthcoming motion to dismiss.

Dated: January 14, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

MICHELLE R. BENNETT
Assistant Branch Director

*/s/ Jordan L. Von Bokern*
JORDAN L. VON BOKERN (D.C. Bar No. 1032962)
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L St. NW
Washington, DC 20005
Phone: (202) 305-7919
Fax: (202) 616-8460
E-mail: Jordan.L.Von.Bokern2@usdoj.gov

*Counsel for Defendants*